UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

BO C.,

           Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

           Defendant.

Case No. C22-5839-MLP

ORDER

## I.    INTRODUCTION

Plaintiff seeks review of the denial of his application for Supplemental Security Income. Plaintiff contends that the administrative law judge ("ALJ") erred by misevaluating the medical evidence, misevaluating Plaintiff's testimony, and misevaluating the lay witness testimony. (Dkt. # 17.) The Commissioner filed a response arguing that the ALJ's decision is free of legal error, supported by substantial evidence, and should be affirmed. (Dkt. # 18.) Plaintiff filed a reply. (Dkt. # 19.) Having considered the ALJ's decision, the administrative record ("AR"), and the parties' briefing, the Court REVERSES the Commissioner's final decision and REMANDS the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).[1]

---

[1] The parties consented to proceed before the undersigned Magistrate Judge. (Dkt. # 2.)

ORDER - 1

## II. BACKGROUND

Plaintiff was born in 1988 and has a high school education. AR at 15. Plaintiff was not gainfully employed prior to the alleged onset of disability. *Id.*

In July 2019, Plaintiff applied for benefits, alleging disability as of April 2007. AR at 128. Plaintiff's applications were denied initially and on reconsideration, and Plaintiff requested a hearing. *Id.* After the ALJ conducted a hearing in June 2021, the ALJ issued a decision finding Plaintiff not disabled. *Id.* at 128-39.

In March 2023, this Court reversed the ALJ's decision and remanded Plaintiff's application under sentence six of 42 U.S.C. 405(g) for a de novo hearing and new decision. AR at 153. On remand, Plaintiff amended the onset date of disability, alleging disability for a closed period from July 15, 2019, through November 17, 2021. *Id.* at 4. After an August 2024 hearing a new ALJ again found Plaintiff not disabled. *Id.* at 4-16.

Using the five-step disability evaluation process,[2] the ALJ found, in pertinent part, Plaintiff had the severe impairments of personality disorder, epilepsy, and trauma. AR at 6. He had the Residual Functional Capacity ("RFC") to perform a full range of work at all exertional levels, but he could never climb, operate heavy equipment or drive a motor vehicle, and could only perform simple, routine tasks, with occasional, superficial contact with coworkers, supervisors, and the general public. *Id.* at 9.

As the Appeals Council denied Plaintiff's request for review, the ALJ's decision is the Commissioner's final decision. AR at 144-46. Plaintiff appealed the final decision of the Commissioner to this Court. (Dkt. ## 1, 9.)

---

[2] 20 C.F.R. § 416.920.

### III.     LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may overturn the Commissioner's denial of social security benefits if the ALJ's decision rests on legal error or is not supported by substantial evidence. *Smartt v. Kijakazi*, 53 F.4th 489, 494 (9th Cir. 2022). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 102-03 (2019) (cleaned up). In applying this standard, the Court must consider the record as a whole to determine whether it contains sufficient evidence to support the ALJ's findings. *Id.*

Although the Court evaluates the record as a whole, it is not permitted to reweigh the evidence or substitute its judgment for that of the ALJ. *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021). The ALJ is tasked with evaluating testimony, resolving conflicts in the medical evidence, and addressing ambiguities in the record. *Smartt*, 53 F.4th at 494-95. Where the evidence can be interpreted in more than one rational way, the ALJ's decision must be upheld. *Id.* Even if the ALJ erred, reversal is not warranted unless the error affected the outcome of the disability determination. *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020). The party challenging the ALJ's decision bears the burden of demonstrating harmful error. *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

### IV.     DISCUSSION

**A.     The ALJ Erred in Evaluating Medical Evidence**

Under regulations applicable to this case, the ALJ is required to articulate the persuasiveness of each medical opinion, specifically with respect to whether the opinions are supported and consistent with the record. 20 C.F.R. § 416.920c(a)-(c). These findings must be supported by substantial evidence. *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

1.      *William R. Wilkinson, Ed.D., and David T. Morgan, Ph.D.*

In September 2019, independent examiner Dr. Wilkinson performed a psychological evaluation for the Washington State Department of Social and Health Services ("DSHS"). AR at 477. He identified marked limitations in Plaintiff's ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision, maintain appropriate behavior in a work setting, and complete a normal workday and work week without interruptions from psychological symptoms. *Id.* at 479.

The ALJ considered the opinion of Dr. Wilkinson, affirmed by Dr. Morgan, and found the opinion unpersuasive because it was unsupported and inconsistent with the medical record. AR at 14. This finding is not supported by substantial evidence.

The ALJ found that Dr. Wilkinson's opinion was unsupported because, though there were three areas of the evaluation outside of normal limits, "[o]therwise, the claimant's examination was within normal limits." AR at 14. This analysis ignores Dr. Wilkinson's clinical interview and findings and rejects, without explanation, the portions of the mental status exam where Dr. Wilkinson found Plaintiff to be outside of normal limits. Dr. Wilkinson's clinical findings documented that Plaintiff experienced symptoms of bipolar disorder, post-traumatic stress disorder, and antisocial personality disorder. *Id.* at 478-79.

The ALJ also found the opinion inconsistent with the medical record which showed "appropriate thought content, and good judgment/insight" and "appropriate behavior, appropriate speech, congruent affect, goal-directed logical thought and perceptual process, and good insight." AR at 14. These findings do not contradict Dr. Wilkinson's opinion that Plaintiff would have marked limitations in his ability to maintain a schedule and complete a normal workday and work week without interruptions from psychological symptoms. *Id.* at 479. To the extent that a

finding of "appropriate behavior" in the context of a doctor's appointment is inconsistent with Dr. Wilkinson's finding that Plaintiff had a marked limitation in his ability to maintain appropriate behavior in a work setting, the record does not support this finding.

The medical records the ALJ cites as showing "appropriate behavior" indicate Plaintiff had ongoing problems with temper and irritability. AR at 14 (citing *id.* at 580-81, 592-93, 605-06, 617-18, 625-26, 722-23). The only exception is a note from April 2020 where Plaintiff had "no outbursts or excessive irritability – which is a big change for him." *Id.* at 617. The record shows this was a brief improvement in Plaintiff's symptoms. For example, notes from the month prior, March 2020, indicate "irritability remains the same, nearly constant, with weekly+ instances of kicking/slamming objects, etc." *Id.* 625. In June 2020, Plaintiff again began experiencing problems, "report[ing] only one major outburst toward a cousin." *Id.* at 605. By September 2020 Plaintiff was "having more problems with anger/temper, which is quite usual for him. Some job difficulties due to mouthing off or walking away." *Id.* at 592. In November 2020 notes indicate Plaintiff "continues to have problems with irritability and temper," such as losing his job because "it was either walk off the job, or stick [his] boss in a deep frier." *Id.* at 580-81. In April 2021 notes indicate Plaintiff "feels irritable most of the time and [has] problematic outburst[s] about twice a week" *Id.* at 722. The record therefore does not support the ALJ's finding that Plaintiff exhibited appropriate behavior that was inconsistent with Dr. Wilkinson's opinion. The Court concludes the ALJ erred in rejecting the opinion without a valid reason supported by substantial evidence.

        2.     *Bruce Eather, Ph.D., and Jon Anderson, Ph.D.*

Plaintiff argues that the opinions of the State agency medical consultants failed to account for limitations related to Plaintiff's migraines. (Dkt. # 17 at 5-6). The ALJ considered

ORDER - 5

the opinion of state agency psychological consultants, Drs. Eather and Anderson, and found their opinions generally persuasive. AR at 14, 103-05, 120-21. Although an ALJ must explain why he rejected a medical opinion, he need not provide reasons for accepting a medical opinion. *See* 20 C.F.R. § 404.1527; 96-8p, 1996 WL 374184, at *7 (July 2, 1996) ("If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."); *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (explaining that the ALJ is not required to provide clear and convincing reasons where the ALJ is not rejecting medical opinion evidence).

An ALJ must, however, provide reasons to credit one medical opinion over another. *See Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). Because, on remand, the ALJ will need to reevaluate the opinion of Dr. Wilkinson, which conflicts with portions of Drs. Eather and Anderson's opinions, the ALJ will have the opportunity to reconsider which opinions to credit.

### 3. Remaining Issues

Plaintiff spends several paragraphs summarizing various parts of the medical record before concluding that "[t]he above cited evidence contradicts the ALJ's reason for rejecting the opinions of Dr. Wilkinson and Dr. Morgan, and this evidence also contradicts the ALJ's reasoning for rejecting [Plaintiff's] testimony." (Dkt. # 17 at 4-5.) Plaintiff waives "any argument based on [clinical] findings" where the claimant "simply lists numerous clinical findings, unaccompanied by argument." *See Putz v. Kijakazi*, 2022 WL 6943095, at *2 (9th Cir. Oct. 12, 2022). That is because "[b]are assertions and lists of facts unaccompanied by analysis and completely devoid of caselaw fall far short of the requirement that counsel present 'appellant's contentions and the reasons for them.'" *Sekiya v. Gates*, 508 F.3d 1198, 1200 (9th

Cir. 2007) (internal citation omitted). The Court will not "manufacture arguments where none is presented." *Indep. Towers of Wash.*, 350 F.3d at 929.

### B.   The ALJ Erred in Evaluating Plaintiff's Testimony

Absent evidence of malingering, an ALJ is required to provide clear and convincing reasons for discounting a claimant's testimony. *See Laborin v. Berryhill*, 867 F.3d 1151, 1155 (9th Cir. 2017). That said, the ALJ is not required to believe every allegation, nor to analyze testimony line by line. *See Ahearn*, 988 F.3d at 1116; *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020). The question is not whether this Court is convinced, "but instead whether the ALJ's rationale is clear enough that it has the power to convince." *Smartt*, 53 F.4th at 499.

The ALJ considered Plaintiff's testimony and discounted it as (1) inconsistent with his activities of daily living, and (2) inconsistent with his treatment record, including improvement with medication. AR at 10. Plaintiff argues the ALJ's reasons are not supported by substantial evidence. (Dkt. # 17 at 6-12.)

Having reviewed the ALJ's decision and the parties' briefing, the Court agrees that the ALJ failed to provide clear and convincing reasons to discount Plaintiff's testimony. The majority of the ALJ's evaluation of Plaintiff's testimony is a summary of the medical record that does not meaningfully link the record to Plaintiff's testimony. AR 10-13; *Morsea v. Berryhill*, 725 F. App'x 463, 465 (9th Cir. 2018) (citing *Brown-Hunter v. Colvin*, 806 F.3d 487, 493-94 (9th Cir. 2015)) (noting that ALJ is required to "link the testimony to particular parts of the record supporting the adverse credibility determination"); *Lambert*, 980 F.3d at 1277 (citing *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014)) (holding that ALJ is required to "specifically identify the testimony [from a claimant] [they] find[] not to be credible and . . . explain what evidence undermines that testimony").

ORDER - 7

Furthermore, the portions of the ALJ's decision where the ALJ did link the record to his analysis of Plaintiff's testimony are not supported by substantial evidence. The ALJ discounted Plaintiff's migraine testimony because "the claimant did not report any migraines/headaches during the relevant period and further, often denied headaches." AR at 13 (citing *id.* at 504, 645, 651, 732). While the cited records do indicate headache was "not present," the record does contain complaints of headaches, including during the relevant period. *Id.* at 464 (On April 12, 2017 "headache is worse – left side. It's hurting since this morning – 6 hours."), 465 (December 13, 2016 "wants meds adjusted for chronic headaches."), 526 (October 2019 intake appointment noting "[h]eadaches, about 4x a week currently. Reports he also has migraine headaches on average few a month."), 632 (February 2020 noting "Headaches – 'migraine' lasting for days or weeks at a time."). The record thus does not support the ALJ's finding that Plaintiff "did not report any migraines/headaches during the relevant period." *Id.* at 13.

The ALJ also cites numerous "normal" MSE findings as contradicting Plaintiff's testimony. As discussed above, many of the records the ALJ cites as showing Plaintiff's "normal" mental status also indicate continuing struggles with mental health symptoms. The Commissioner cites an April 2020 note as showing medication made Plaintiff "essentially asymptomatic." (Dkt. # 18 at 6). But this fails to account for the waxing and wanning symptoms that are common in mental health issues. *Garrison*, 759 F.3d at 1017 ("while discussing mental health issues, it is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment."). As discussed above, Plaintiff's mental health symptoms were prevalent immediately before and after April 2020. AR at 580-81, 592, 605, 722. The Commissioner further argues that Plaintiff was seizure-free with medication, but the cited portions of the record do not support this proposition. (Dkt. # 18 at 7 (citing AR at 13, 504, 645,

ORDER - 8

651, 732)). These citations are the same that the ALJ used to find that Plaintiff "did not report any migraines/headaches during the relevant period." AR at 13. Contrary to the Commissioner's assertion, these records do not contradict Plaintiff's testimony that seizures were a side-effect of Keppra, which he was taking to manage his migraines. *Id.* at 35.

Though inconsistencies in daily activities might justify skepticism regarding symptom testimony, "the mere fact that a plaintiff has carried on certain daily activities does not in any way detract from [his] credibility as to [his] overall disability." *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004) (citations omitted). A claimant "does not need to be utterly incapacitated in order to be disabled." *Id.* (quoting *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001)). Here, the ALJ failed to link Plaintiff's activities to the portions of Plaintiff's testimony he was discounting. *Brown-Hunter*, 806 F.3d at 493-94 (noting that ALJ is required to "link the testimony to particular parts of the record supporting the adverse credibility determination"); *Lambert*, 980 F.3d at 1277 (citing *Treichler*, 775 F.3d at 1102) (holding that the ALJ is required to "specifically identify the testimony [from a claimant] [they] find[] not to be credible and . . . explain what evidence undermines that testimony"). The ALJ found that records supported Plaintiff's testimony that he fished and rode his bike or took the bus for transportation, and that he took care of his own personal care. AR at 13 (citing *id.* at 690). The Commissioner argues that "all of this suggests greater capabilities than Chamber's claim of disability would imply." (Dkt. # 18 at 7). But the ALJ's decision again fails to link these findings to any contradiction with Plaintiff's testimony.

Lastly, the ALJ discounted Plaintiff's testimony because Plaintiff began working full-time at Jiffy Lube after the period where he is alleging disability. AR at 10, 13. The ALJ failed to develop the record, however, as to the relevance of this work with Plaintiff's alleged

ORDER - 9

period of disability. Consequently, the ALJ failed to provide clear and convincing reasons for rejecting Plaintiff's testimony.

### C. The ALJ Erred in Evaluating Lay Witness Testimony

The ALJ "considered the third-party function report by [D.C.], the claimant's father" and provided no further evaluation of this evidence. AR 14-15. ALJs cannot dismiss significant, probative evidence without valid justification. *See Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984). This requirement ensures that the agency "set[s] forth the reasoning behind its decision in a way that allows for meaningful review." *Brown-Hunter*, 806 F.3d at 492. Because the Ninth Circuit has not yet clarified whether an ALJ is still required to provide "germane reasons," the ALJ should reevaluate the lay witness testimony on remand.

### D. Remand

Plaintiff requests remand for an award of benefits because Dr. Wilkinson's opinion, Plaintiff's testimony, and D.C.'s testimony, if credited as true, would support a finding of disability. (Dkt. # 17 at 15-16).

Remand for an award of benefits "is a rare and prophylactic exception to the well-established ordinary remand rule." *Leon v. Berryhill*, 880 F.3d 1041, 1044 (9th Cir. 2017). To determine whether such an award is appropriate, the Court applies a three-step framework. *Id.* at 1045. First, the Court must determine whether the ALJ has failed to provide legally sufficient reasons for rejecting evidence. *Id.* (citing *Garrison*, 759 F.3d at 1020). Second, the Court must determine "whether the record has been fully developed, whether there are outstanding issues that must be resolved before a determination of disability can be made, and whether further administrative proceedings would be useful." *Treichler*, 775 F.3d at 1101 (internal citations and quotation marks omitted). If the first two steps are satisfied, the Court must determine whether,

ORDER - 10

"if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison*, 759 F.3d at 1020. Even if the Court concludes all three steps are satisfied, "it is within the court's discretion either to make a direct award of benefits or to remand for further proceedings." *Leon*, 880 F.3d at 1045 (citing *Treichler*, 773 F.3d at 1101).

Here, outstanding issues remain for the ALJ to resolve. Dr. Wilkinson's opinion and Plaintiff and D.C.'s testimony conflicts with the lesser limitations opined by the State Agency consultants. The ALJ must resolve this conflict. *See Ahearn*, 988 F.3d at 1115 ("The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.") (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). In addition, even if Dr. Wilkinson's opinion were accepted, the ALJ would need to determine how to interpret the "marked" limitations into an RFC. Because unresolved conflicts remain in the record, remand for further proceedings is appropriate.

## V. CONCLUSION

For the foregoing reasons, the Commissioner's final decision is REVERSED and this case is REMANDED for further administrative proceedings under sentence four of 42 U.S.C. § 405(g). On remand, the ALJ shall reassess Plaintiff's testimony, the lay witness statement, and Dr. Wilkinson's opinion; reevaluate the RFC as appropriate; and proceed to steps four and five as needed.

Dated this 11th day of June, 2025.

MICHELLE L. PETERSON
United States Magistrate Judge